UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES EDWARD DELANEY,

    Plaintiff,

v.

UNITED PARCEL SERVICE,

    Defendant.

_____/

CASE NO. 1:07-CV-234

HON. ROBERT J. JONKER

## OPINION

Plaintiff James Edward Delaney brings this employment discrimination action against United Parcel Service ("UPS") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2000e(17). This matter is before the Court on Defendant UPS's Motion for Summary Judgment (docket # 30). Mr. Delaney has responded to the motion (docket # 36). The Court will also consider Mr. Delaney's belated discovery motion (docket # 35). After carefully reviewing the full record, the Court considers oral argument in this case unnecessary.

**Background**

Mr. Delaney began his employment with UPS in 1987 as a part-time pre-loader. (Def. UPS's Brief in Supp. of Mot. for Summ. J., docket # 31, Ex. A, Delaney Dep., at 6-7.) He became a full-time UPS delivery driver approximately two years later and continued in that position for the duration of his employment with UPS. (Delaney Dep. at 7.) For the last

several years of Mr. Delaney's employment with UPS, Mike Wagenmaker was Mr. Delaney's supervisor. (*See id.* at 7-8). As a UPS delivery driver, Mr. Delaney belonged to a union. (*Id*. at 8.) John Adams served as his union representative. (*Id*. at 9.)

In 2003, Mr. Wagenmaker met with Mr. Delaney and Mr. Adams, informing them that he had reviewed performance records from previous years and that Mr. Delaney needed to improve his work performance. (*Id*. at 16.) Some time after that meeting, UPS implemented a new package sorting technology, the PAS system. (*Id*. at 19-20.) In early March, 2004, soon after the implementation of the PAS system, an industrial engineering supervisor, Scott Wager, accompanied Mr. Delaney on his delivery route. (*Id*. at 22-24.) Mr. Delaney was unable to deliver all of his packages that day, which resulted in "missed packages," that is, packages not delivered or picked up as scheduled. (*Id*. at 24-25.)

At the delivery center where Mr. Delaney worked, it was the practice for any driver who realized he or she was likely to have missed packages on a particular day to notify the center manager, so that the center manager could dispatch assistance. (*Id*. at 11-12.) On a day later in March, 2004, Mr. Delaney realized that he would likely not be able to complete all of his scheduled deliveries and pickups. (*Id*. at 27-28.) He notified his management of this about 4:45 that day. (*Id*. at 28-29.) Another delivery driver came to help him, taking over all the pickups that had to reach the service center by 8:00 p.m. (*Id*. at 30.) Nonetheless, Mr. Delaney was not able to make all of his scheduled deliveries, ending the day with approximately 15-20 missed packages. (*Id*. at 30 and 34.)

The next business day, Mr. Wagenmaker met with Mr. Delaney along with Mr. Adams and told Mr. Delaney that his employment was being terminated. (*Id*. at 36-37.) Mr. Delaney recalls being terminated for missed packages, but his termination letter stated that he was being terminated for failing to notify his center's management team in a timely manner of likely missed packages, resulting in service failures. (*Id*. at 26-27.) Mr. Delaney filed a grievance through his union, and hearings took place at the local and state levels. (*Id*. at 38-40.) Following the state-level hearing, Mr. Delaney's employment was reinstated. (*Id*. at 40.)

On Mr. Delaney's second day back at work following his reinstatement, a UPS supervisor, Rockland Adams, accompanied him on his delivery route and critiqued his work performance. (*Id*. at 42-43.) Mr. Delaney found the instructions and suggestions Mr. Adams gave him frustrating and even antagonizing. (*Id*. at 46-47.) According to Mr. Delaney, Mr. Adams told him in an aggressive manner not to shake customers' hands; to start the truck within 8.62 seconds after getting into it; not to hand customers packages, but rather to place packages on the counter or floor; to park differently; and to hurry back to the truck after each delivery. (*Id*. at 43-44.)

The next day, April 28, 2004, Mr. Delaney resigned from UPS. (*Id*. at 47.) Mr. Delaney's resignation letter stated,

> After careful consideration of my goals and professional desires, I have come to realize that customer service has been the primary reason for my employment at UPS. While I value efficiency and high standards of

3

>productivity, I feel that sacrificing my relationship with the customer would be missing the point of being an ambassador for UPS.
>
>For these reasons, I, James Delaney, effective April 28, 2004, submit my resignation.

(*Id*. at 47 - 48.)  Mr. Delaney has acknowledged that if he had wanted to continue working at UPS, he could have, but that he resigned voluntarily.  (*Id*. at 49.)  Mr. Delaney has stated that he chose to resign not only because of the focus on efficiency at UPS but also because of racial discrimination.  (*Id*. at 50-51.)  When asked to point to facts showing that there was discrimination, however, Mr. Delaney stated that there were no whites terminated for missing packages but that he was aware of no other evidence of discrimination.  (*Id*. at 51 and 58.)

## Legal Standard

Defendant UPS has moved for summary judgment under FED. R. CIV. P. 56(c).  Summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) (citing FED. R. CIV. P. 56(c)).  A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the Court views the evidence and draws all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  But that does not mean that any amount of evidence, no matter how small,

will save a nonmoving party from losing on a motion for summary judgment. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). When the nonmoving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Where, as in this case, a plaintiff has not presented direct evidence of racial discrimination, the *McDonnell-Douglas* burden-shifting approach applies. *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003)). Under the *McDonnell-Douglas* framework, the plaintiff must first establish a prima facie case of racial discrimination, which requires showing (1) the plaintiff is a member of a protected class; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for the position; and (4) a person not in the protected class received more favorable treatment. *See id*. (quoting *Braithwaite v. Timkin Co.*, 258 F. 3d 488, 493 (6th Cir. 2001)). "'The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination.'" *Id*. (quoting *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007)).

If the plaintiff establishes a prima facie case of racial discrimination, the burden shifts to the defendant to show through the introduction of admissible evidence a legitimate, non-

5

discriminatory reason for the adverse employment decision. *Id*. (citing *Braithwaite*, 258 F.3d at 493 and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the defendant satisfies this burden, the burden shifts back to the plaintiff to show that the defendant's articulated reason was pretextual. *Id*. at 701. A plaintiff may make such a showing by demonstrating that the articulated reason (1) lacks any basis in fact; (2) did not motivate the challenged adverse action; or (3) was insufficient to warrant the challenged adverse action. *Id*. (quoting *Johnson*, 319 F.3d at 866).

## Analysis

**A.     Motion for Summary Judgment**

Mr. Delaney has not established a prima facie case of racial discrimination, because he has not suffered an adverse employment action, the second element of the prima facie case. The record plainly reflects that Mr. Delaney voluntarily resigned from his position at UPS. *See* Def. UPS's Brief in Supp. of Mot. for Summ. J., docket # 31, Ex. B, Delaney Resignation Letter. His letter of resignation sets forth his reasons for resigning: "While I value efficiency and high standards of productivity, I feel that sacrificing my relationship with the customer would be missing the point of being an ambassador for UPS." *Id*. Although UPS had earlier terminated Mr. Delaney's employment, there is no dispute that UPS had reinstated him as a result of the grievance process. Mr. Delaney has explicitly acknowledged that had he reported to work on April 28, 2004, instead of resigning that day, he could have continued working for UPS. *See id*., Ex. A, Delaney Dep. at 49.

A voluntary resignation that amounts to a constructive discharge may be an adverse employment action. *See Smith v. Henderson*, 376 F.3d 529, 533-34 (6th Cir. 2004). There is no such claim in this case, and the evidence on the record would not support such a claim in any event. A constructive discharge requires a determination that working conditions are objectively intolerable to a reasonable person. *Id*. "In the case of constructive discharge, 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Goldmeier v. Allstate Ins. Co.*, 337 F.3d 629. 635 (6th Cir. 2003) (quoting *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 887 (6th Cir. 1996)). Criticism of an employee's work performance is "normally . . . insufficient to establish constructive discharge as a matter of law." *Smith,* 376 F.3d at 534 (citing *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002)). Nothing in the record suggests that working conditions at UPS were objectively intolerable such that a reasonable person would feel compelled to resign, and Mr. Delaney has made no such claim.

Because Mr. Delaney cannot establish an essential element of his prima facie case, his claim of racial discrimination simply cannot succeed. *See Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007). Accordingly, Defendant UPS is entitled to summary judgment in this matter.

**B.     Belated Discovery Motion**

Mr. Delaney filed a belated "Motion to Produce Documents" (docket # 35) in partial response to UPS's Motion for Summary Judgment. Mr. Delaney's discovery motion is untimely. Discovery concluded on January 31, 2008. (Case Management Order, docket # 15.) Mr. Delaney's motion was served on Defendant on March 3, 2008 and filed with the Court on March 17, 2008. (Def.'s Reply to Pl.'s Mot. to Produce Documents, docket # 38, at 1; Mot. to Produce Documents, docket # 35.) Further, Mr. Delaney has been uncooperative with the discovery process in the past, cancelling depositions of individuals who had traveled to Grand Rapids, Michigan to be deposed, approximately 45 minutes before the scheduled time . (Def.'s Reply to Pl.'s Mot. to Produce Documents, docket # 38, at 3.) Finally, the Court is denying Mr. Delaney's Motion to Produce Documents because further discovery in this matter would be futile, since there is no dispute that Mr. Delaney voluntarily resigned his position with UPS, and this all by itself is enough to invalidate his claim in this case.

## Conclusion

It is undisputed that Mr. Delaney voluntarily resigned from UPS. Therefore, Mr. Delaney cannot establish an essential element of a prima facie case of employment discrimination. Further discovery would be futile, since it could not alter the fact of his voluntary resignation, which is dispositive in this matter. Accordingly, the Court will grant

UPS's Motion for Summary Judgment (docket # 30), and will deny Mr. Delaney's belated discovery motion (docket #35).


Dated:     June 27, 2008              /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      UNITED STATES DISTRICT JUDGE